**J.M. MILLER, Appellant,**

v.

**James A. BAKER, III, in His Capacity as Secretary of State.**

**No. 90–5398.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 5, 1992.

Decided July 10, 1992.

Rehearing Denied Sept. 16, 1992.

Leslie M. Turner, with whom Daniel Joseph was on the brief, for appellant. Dennis M. Race also entered an appearance, for appellant.

Richard N. Reback, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates, and R. Craig Lawrence, Asst. U.S. Attys., and Thomas O'Herron, Attorney, Dept. of State, were on the brief, for appellee.

Turna R. Lewis and Bridget R. Mugane were on the joint brief, for amici curiae, urging that the decision of the District Court be overturned.

Before: WALD, WILLIAMS, and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

The Foreign Service Act creates a curious structure for dealing with grievances brought by probationary employees whom the Secretary of State decides not to retain and give tenure. The Secretary's decisions to grant tenure or to separate employees are made pursuant to the binding recommendation of the Commissioning and Tenure Board. 22 U.S.C. §§ 3946(b), 4001–4002. The tenure board bases its recommendation on the employee's personnel records. 22 U.S.C. § 4003. The tenure board's recommendation and the Secre-

tary's decision to terminate an employee are not *per se* reviewable by the Foreign Service Grievance Board. 22 U.S.C. § 4131(b)(2), (b)(3). Any alleged inaccuracy in the employee's personnel records, however, is "grievable." 22 U.S.C. § 4131(a)(1)(E). If the Grievance Board finds merit in the grievance, it has the power to recommend extending the grievant's probationary term, 22 U.S.C. §§ 3949(b)(3); 4137(b)(3); 4137(d)(1), or even granting the grievant tenure. 22 U.S.C. § 4137(b)(4), (d)(1). That recommendation is—subject to certain exceptions—binding upon the Secretary. 22 U.S.C. § 4137(d)(1).

The Grievance Board has another power. If, while a grievance is pending before it, the Secretary proposes to separate the grievant, and the Board determines that the proposed separation is related to the grievance, then the Board in some circumstances may require the Secretary to suspend the proposed separation until the grievance is resolved. 22 U.S.C. § 4136(8). This case concerns the scope of that power.

## I

Johnnie Mary Miller entered the Foreign Service in June 1978, with a limited appointment as a career candidate, employed by the Department of State. *See* 22 U.S.C. §§ 3941(d)(1), 3946(a). As a career candidate, she had at most five years in which to qualify for tenure as a career member of the service. *See* 22 U.S.C. §§ 3941(d)(1), 3949(a). Miller did not achieve tenure within the five-year period, but was given a second five-year limited appointment in which to qualify. In April of 1988, the State Department informed her that she had not qualified for tenure, and that she would be separated, pursuant to 22 U.S.C. § 3949, from the Department in June of that year. Miller then pursued the Department's internal, administrative grievance procedures, contending that her Employee Evaluation Reports were inaccurate. Her separation was stayed pending that process. In January 1989, the Department denied her relief, and on March 17, 1989, it indicated that it would proceed with her

separation. Miller then filed an appeal with the Grievance Board. She requested the Board to order the Secretary to suspend her proposed separation on the ground that it was related to her pending grievance. In August 1989, the Board did so.

The Department responded by informing Miller, in September 1989, that it had decided to terminate her, as of October 20, 1989, pursuant to 22 U.S.C. § 4011, which authorizes the Secretary to terminate any career candidate "at any time." *Id.* The Board viewed this as an attempt to circumvent its earlier order, and directed the Secretary not to separate Miller until the Board completed its review of her grievance. The Department stayed its hand until February 1990, when it expressed its intention to separate Miller as of February 24.

On February 21, 1990, Miller initiated this litigation, filing suit in the district court seeking a declaration that the Board's order suspending her separation was binding on the Secretary and an order preventing the Secretary from separating her. In the alternative, her complaint requested that she be reinstated with full backpay and benefits. The district court refused to issue a temporary restraining order, and Miller was separated on February 24, 1990. In May, the Grievance Board denied her grievance on the merits. So far as we are told, she has taken no appeal from that decision. The district court eventually granted the Secretary summary judgment, holding that the Board's power to suspend pending separations could not be read to limit the Secretary's power, under 22 U.S.C. § 4011, to "terminate at any time" a career candidate serving a limited appointment. *Miller v. Baker,* 749 F.Supp. 293, 298–99 (D.D.C.1990). This appeal followed.

## II

The parties and the district court appear to have assumed that this litigation retains vitality notwithstanding Miller's loss on the merits of her grievance. To ensure that we fulfill our obligation to decide only those cases within our jurisdic-

tion, and to minimize the possibility that what we write will have unintended collateral consequences, we pause briefly to address the issue.

The focus of Miller's complaint was a request to be kept on the rolls, or to be reinstated if she was fired before the case could be heard. Were those the only forms of relief she requested, the case would be moot. Miller's complaint, however, also requested backpay. The Act gives the Grievance Board the authority to award backpay, "in accordance with" 5 U.S.C. § 5596(b)(1) "[i]f [it] finds that the grievance is meritorious," 22 U.S.C. § 4137(b), (b)(4). By its terms, section 4137(b) would seem not to cover Miller. The Board already has found her grievance nonmeritorious, and the substance of that decision is not before us today.

It nevertheless appears that Miller may have a claim for monetary damages. The gist of her argument here is that the Board's interim orders—directing that she not be terminated prior to the Board's resolution of the merits of her grievance—were valid, and that the Secretary had no business disregarding them. If she is right, then in some sense she was entitled to be employed—or at least to be paid, *see* 22 U.S.C. § 4136(8)—until May 21, when her grievance was rejected. She may have a claim, distinct from the merits of her original grievance, that she has been denied a "financial benefit to which [she] claims entitlement under applicable laws," 22 U.S.C. § 4131(a)(1)(G). Improper denial of such a benefit would constitute an injury, and the Act expressly contemplates redress of such grievances, even when brought by former employees, as she now is. 22 U.S.C. § 4132.

We cannot and do not express any views on the merits of such a claim. Such questions—like questions about Miller's possible entitlement to benefits, pension eligibili-

ty, and so forth—are for the Board to answer in the first instance. We simply note that a ruling today in Miller's favor would open up the possibility of such claims, while a ruling against her would certainly foreclose them, by establishing that the Secretary violated nothing by separating her in February as opposed to May. In the absence of anything to the contrary from the government, we think these facts sufficiently establish that Miller alleges a present injury our ruling may redress. *See Powell v. McCormack*, 395 U.S. 486, 495–500 (1969).

### III

 Most of the difficulty in this case arises from the fact that the Board, the parties, and the district court all framed their analysis around an unpublished district court decision, rendered in 1983, which held that the Board had no power to suspend a section 4011 termination even if it related to a pending grievance. *Haynes/Sethi* Decision, Nos. 83–2404 & 83–2446 (D.D.C. Sept. 1, 1983) (reproduced in the Joint Appendix at 32). This caused argument below to focus on whether appellant's separation was "really" taking place under section 4011, or whether that section had been invoked only belatedly, to circumvent the Board's suspension of Miller's "real" section 3949 (expiration of limited term) separation. We find it unnecessary to address that issue, for we think the Act, especially in light of Congress' recent modifications to it, makes *Haynes/Sethi* too weak a reed.

The section of the Act granting the Board power to suspend "the involuntary separation of the grievant" draws no distinction between career candidates and tenured employees, nor between terminations under differing sections of the Act, such as 22 U.S.C. §§ 3949, 4010, 4011, and 4012. 22 U.S.C. § 4136(8).[1] This would strongly

---

1. If the Board determines that the Department is considering the involuntary separation of the grievant, disciplinary action against the grievant, or recovery from the grievant of alleged overpayment of salary, expenses, or allowances, which is related to a grievance pending before the Board and that such ac-

tion should be suspended, the Department shall suspend such action until the Board has ruled upon the grievance. Notwithstanding such suspension of action, the head of the agency concerned or a chief of mission or principal officer may exclude the grievant from official premises or from the perform-

suggest that the Board's action here was valid, regardless of whether the Secretary was proceeding under section 3949 or under section 4011. The first specifically contemplates separation at the end of a limited term, while the second authorizes earlier separation, but termination under either can be suspended if related to a pending grievance.

Against this rather straightforward reading, the Secretary offers two main objections.

First, he notes that the Act, as recognized by this court's decision in *United States Information Agency v. Krc*, 905 F.2d 389 (D.C.Cir.1990), denies the Board jurisdiction over the "expiration of a limited appointment [or] the termination of a limited appointment under section 4011" *per se.* 22 U.S.C. § 4131(b)(3). Allowing the Board to suspend such an expiration or termination, the Secretary argues, would vitiate this exclusion.

We think this point lost whatever force it had when Congress amended the Act in 1987 expressly to vest the Board with power to recommend tenure as a remedy for a probationary employee's grievance. 22 U.S.C. §§ 4137(d), 3949(b)(3); Pub.L. No. 100–204, 101 Stat. 1363, 1364 (1987); *see also* H.R.CONF.REP.NO. 475, 100th Cong., 1st Sess. 140 (1987). True, Congress did not amend section 4131(b)(3) to bring terminations *per se* under the Board's jurisdiction, and it has done nothing to suggest that *Krc* is not still good law. But the 1987 amendments would make no sense unless Congress was contemplating other grievances—such as those complaining of inaccurate employee evaluations—so related to a termination that tenure would be a justifiable remedy. The power to award tenure is more drastic than the power to delay a proposed separation, and we will

not ascribe to Congress an intent to balk at the latter when it has granted the former.

Second, the Secretary argues that allowing the Board to suspend terminations proposed under section 4011 would restrict impermissibly his authority, granted by that section, to terminate career candidates "at any time." In support of this, the Secretary notes that section 4011 contains one but exception—"as provided in section 4010(a)(2) of this title"—and asserts that Congress must have meant it as the only limitation on an otherwise absolute power.

This argument might get somewhere if anything in section 4011, including the excepting reference to section 4010(a)(2), restricted or even related to a service member's ability to file a grievance. Nothing does. *Krc* held, and the Secretary's Brief here assumes, that the Board would have jurisdiction over a grievance brought by a candidate terminated for "an improper reason" under section 4011—that is, because, as alleged here, the termination rested on erroneous information, or because, as *Krc* considered, the termination, although actually based on misconduct, purported to rest on section 4011. Brief for Appellee at 15–16, 19; *Krc*, 905 F.2d at 394. The grievance system, then, is not displaced by virtue of the lack of a temporal restriction on the Secretary's power to terminate career candidates.

Section 4011's reference to section 4010(a)(2) is similarly unavailing. Section 4010(a)(2) gives a career candidate the right to a *pre-termination* hearing if the Secretary proposes to separate the candidate for misconduct. (It also affords a career employee the right to a pre-termination hearing if the Secretary proposes to terminate him for cause.) In those circumstances, the right to a hearing does not depend on the filing of a grievance; the hearing takes place unless the employee expressly waives

---

ance of specified functions when such exclusion is determined in writing to be essential to the functioning of the post or office to which the grievant is assigned. Notwithstanding the first sentence of this paragraph, the Board's authority to suspend such action shall not extend to instances where the Secretary, or his designee, has determined that there is rea-

sonable cause to believe that a grievant has committed a job-related crime for which a sentence of imprisonment may be imposed and has taken action to suspend the grievant without pay pending a final resolution of the underlying matter.
22 U.S.C. § 4136(8).

it, in writing. 22 U.S.C. § 4010(a)(2). Such hearings are even excluded from the statutory definition of the term "grievance." 22 U.S.C. § 4131(b)(4). It seems the pre-termination hearings contemplated by section 4010(a)(2) may reflect Congress' recognition of the fact that employees' interests in some forms of tenured employment, *see, e.g., Perry v. Sindermann,* 408 U.S. 593, 599–603, 92 S.Ct. 2694, 2698–2700, 33 L.Ed.2d 570 (1972), or reputation, *see, e.g., Doe v. Department of Justice,* 753 F.2d 1092, 1111 (D.C.Cir.1985), may be substantial, and that in such circumstances some pre-termination process, whether or not "due," *cf. Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is desirable. But whatever Congress had in mind, the statute provides no indication that it was grievances.

The Secretary's other arguments boil down to pointing out that an employee whose termination is suspended but ultimately upheld by the Board will have received a windfall, and urging that Congress could not possibly have meant to enact such a scheme. A "no-suspension-of-termination" rule, however, would also have error costs: reinstated employees, though entitled to backpay, would still have suffered significant disruption to their careers. The record provides no direct indication of which error Congress thought more likely, or more weighty. The fact that Congress chose one risk instead of the other does not amount to an absurd, or even an improbable, result.

We are left with nothing to support variance from what seems to us the straightforward reading of the Act given at the outset. Congress intended that the Secretary be able to terminate employees in a variety of ways, many of which are not themselves grievable. It nevertheless granted employees—whether tenured or not—the right to pursue grievances on some issues which might relate to a pending termination. When such a related is-

sue is validly before the Board, and the Board determines that suspension is appropriate,[2] the Secretary must forbear until the merits are resolved. We hold that the Board's power to suspend proposed separations related to a pending grievance, 22 U.S.C. § 4136(8), applies to a separation proposed under 22 U.S.C. § 4011. The Board's suspension order in this case was, therefore, within the scope of its legal authority. We leave it to the Board to address Miller's claims for backpay and related benefits.

The judgment of the district court is
*Reversed.*

---

**2.** We note that there is no claim on this record that the Board makes a practice of indiscriminately suspending separations. From the one Board decision cited to us which addresses the subject, it seems the Board requires the grievant to establish "a reasonable prospect of attaining relief that will result in his or her being retained in the Service." Grievance of Glenn A. Knight, ROP No. G–89–083–STATE–68 at 12 (Feb. 16, 1990).